IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANE DOE "VICTIM",

    Plaintiff,

    v.                                                          No.18-CV-00085 WP/KK

ALBUQUERQUE PUBLIC SCHOOLS "APS,"
MONTE VISTA ELEMENTARY SCHOOL "MONTE VISTA,"
JOHN AND JANE DOE APS OFFICIALS AND EMPLOYEES,
AMY LAUER,[1] AND WILLIAM BEEMS

    Defendants.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS IV AND V
### and
### DENYING DEFENDANT'S MOTION TO DISMISS AS TO COUNT II

THIS MATTER comes before the Court upon Defendant Amy Lauer's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings to Dismiss Plaintiff's Claims for Negligence, Violation of Constitutional and Civil Rights and Intentional and Negligent Infliction of Emotional Distress, filed on April 4, 2018 (**Doc. 20**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken as to Counts IV and V and, therefore, is granted. However, the motion is denied as to Count II.

### BACKGROUND

Plaintiff has filed this action pursuant to Title IX, Title VII and other federal statutory provisions alleging that she was sexually assaulted by Defendant William

---

[1] Defendant's last name is also spelled "Laure," e.g., in the caption of the Complaint (see Doc. 1-2), but the name appears as "Lauer" more frequently.

Beems while she was a student at Monte Vista Elementary approximately twenty years ago. In this motion, Defendant Lauer moves to dismiss all of Plaintiff's claims asserted against her under Fed.R.Civ.P. 12(b)(6) or in the alternative, Rule 12(c). The Complaint contains six counts:

>Count I: Sexual Assault, Abuse and Battery against Defendant Beems;
>Count II: Negligence and Premises Liability;
>Count III: Vicarious Liability and Premises Liability;
>Count IV: Negligent and Intentional Infliction of Emotional Distress;
>Count V: Violations of Plaintiff's Due Process, Equal Protection and Constitutional Rights (state and federal); and
>Count VI: Outrage, Systemic Failure and Prima Facie Tort.

Defendant Lauer seeks dismissal of Counts II, IV and V under Fed.R.Civ. P. 12(b)(6) or alternatively, Rule 12(c). As Defendant points out, Plaintiff inaccurately characterizes Ms. Lauer's motion as a Motion for Summary Judgment, confusing Rule 12(c) with Rule 56. *See* Doc. 25 at 1, n.1 and at 3-5. Plaintiff contends that because there are genuine issues of fact, the Court should not dismiss any of Plaintiff's claims, but she seems to overlook the fact that claims which fail to meet the much lower threshold under Rule 12(b)(6) or Rule 12(c) threshold may also be dismissed.

Defendant moves for dismissal of the state law claims in Count II (Negligence and Premises Liability) and Count IV (Negligent and Intentional Infliction of Emotional Distress) and for Plaintiff's §1983 claims in Count V. However, Plaintiff waives her claim for intentional or negligent infliction of emotional distress in Count IV, agreeing with Defendant that it is not an enumerated tort under the New Mexico Tort Claims Act, and thus Count IV fails to state a claim. *See* Doc. 28 at 21 and Doc. 31 at 11; *see Romero v. Otero et al*, 678 F.Supp. 1535, 1540 (D.N.M. 1987); *Silva v. Town of Springer et al*, 121 N.M. 428, 435 (Ct.App. 1996); *see also Rall v. Hobbs Mun. Sch. Dist.*, No. CIV 15-

0518 RB/CG, 2016 WL 10588125, at *5 (D.N.M. Mar. 16, 2016) ("Plaintiffs do not point to a waiver of immunity for their . . . intentional infliction of emotional distress claim, nor can the Court find authority for such a waiver."). Plaintiff nevertheless contends that Count IV should remain as an element of damages because it is linked to the injury caused by conduct for which there is no waiver, *see* Doc. 28 at 21, but this contention has no merit as there is no legal basis for an award of damages for a claim that does not exist. Plaintiff is not precluded from seeking such damages if they are recoverable through other causes of action. The Court therefore dismisses Count IV under 12(b)(6).

**DISCUSSION**

Defendant has asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012). Where an individual defendant asserts qualified immunity, the burden shifts and the plaintiff must come forward with sufficient evidence to show (1) that the defendant violated a constitutional or statutory right, and (2) that the right was clearly established at the time of the conduct. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010). A court may consider these two inquiries in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The same two-part test for qualified immunity applies in the context of a motion to dismiss. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011); *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (a motion filed under Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to

motions filed under Rule 12(b)(6). Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Twombly, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id*. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A motion filed under Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to motions filed under Rule 12(b)(6). *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). In considering the motion, the Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id*.

**I.     Insufficiency of Allegations for §1983 Claims**

In Count V, Plaintiff asserts "Violations of Plaintiff's Due Process, Equal Protection and Constitutional Rights." Defendant contends that Plaintiff has not alleged any facts with respect to Ms. Lauer's involvement in these federal claims and further, has failed to identify in the complaint how she violated those rights.

     A.     <u>Lack of Specificity Regarding §1983 Claims</u>

4

The complaint contains 212 numbered paragraphs with allegations against Ms. Lauer and the various other Defendants in this case, with 111 of those contained in Count V.[2] Under the *Iqbal-Twombly* standard, "it is 'particularly important' that 'the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011), cited in *Rall v. Hobbs Mun. Sch. Dist.*, No. CIV 15-0518 RB/CG, 2016 WL 10588125, at *5 (D.N.M. Mar. 16, 2016).

The vast majority of the allegations relate solely to the conduct of Defendant Beems. For example, the complaint alleges that when Defendant Beems was a teacher at Monte Vista Elementary School ("Monte Vista") between 1998 and 2003, he "made Plaintiff sit on his lap or close to him while he fondled, groped, petted, and touched her in sexually explicit ways in intimately private areas." Compl., ¶108. Other allegations refer to the Defendants collectively, for example:

> "Defendants permitted a regime of physical conduct of a sexual nature by William Beems in violation of the Plaintiff's rights." Compl., ¶139;

> "Defendants, APS and OEOS [Office of Equal Opportunity Services], Jane and John Doe defendants breached their duties and failed to protect Plaintiff's rights from the type of harm suffered." ¶146;

> "Defendants violated Plaintiff's rights protected under Title VII of the civil Rights Act of Title IX." ¶147:

> "Defendants recklessly allowed this to occur and persist contrary to their duties." ¶148;

> "APS and Defendants allowed William Beems . . . to engage in various sexual acts." ¶158; and

> "The willful disregard for the obvious inappropriate sexual exploitation of Plaintiff is so egregious and outrageous that the Defendants [sic] actions and

---

[2] The Court focuses on Count V for this discussion since it is the only count alleging federal claims.

omission of defendants shock the conscience for the purposes of the Fourteenth Amendment." ¶159.

Even fewer allegations identify any specific conduct alleged in connection with any of the other Defendants, including Ms. Lauer. This is a problem for the Plaintiff because to be liable under §1983, an individual must either directly participate in the alleged violation or "cause" someone to be deprived of her constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citing *Buck v. City of Albuquerque,* 549 F.3d 1269, 1279 (10th Cir.2008)).

What makes it difficult in this case to determine whether the complaint passes muster under either Rule 12(b)(6) or Rule 12(c) is that it is pleaded in a manner that makes it difficult not only to determine the specific legal theories alleged, but also to know which theories are being asserted against which defendants. In particular, Count V is a jumble of 111 allegations that are loosely connected to very ill-defined federal claims, each of which would have been set out in a well-drafted complaint under individual and separate counts. Instead, one has to infer what legal theory Plaintiff's counsel might be advancing, based on facts which meander and overlap throughout the complaint. For example, Count V mentions Title IX (Doc. 1-2, ¶¶134, 135) and hints at a Fourteenth Amendment claim here and there by use of language such as "shocks the conscience" and "substantive due process right to bodily integrity." *See* § 142, 151 & 170. The Court also notes that Plaintiff's response mentions the Fourth Amendment, Doc. 28 at 14 ("Defendant Lauer has failed to show that she cannot be liable for participating or acquiescing in the deprivation of Plaintiff's Fourth and Fourteenth Amendment

rights"),³ but the Fourth Amendment is not mentioned anywhere in Count V. In short, the drafting of the complaint indicates either a sloppiness and lack of due care on Plaintiff's counsel's part, or an unfamiliarity with the various federal legal theories Plaintiff's counsel purports to raise in this case.

Defendant suggests that Plaintiff may be asserting a supervisory liability theory which she contends is also inadequately pled because the complaint fails to assert any of the elements of a supervisory liability claim under §1983 or otherwise identify how Ms. Lauer violated Plaintiff's constitutional rights. Doc. 20 at 5-6. First, Defendant points out that Ms. Lauer was not Mr. Beems' supervisor and that she had no oversight role with respect to him. The complaint offers nothing to contradict this representation, as the complaint describes both Defendant Beems and Defendant Lauer only as "employee[s]" of Albuquerque Public Schools and Monte Vista Elementary School. Compl., ¶¶11-12. There is nothing in the complaint stating that Defendant Lauer is or was Defendant Beems' supervisor except for the sole assertion that "William Beems initiated "massage trains" in Plaintiff's classroom, *supervised* by Amy Lauer." Compl., ¶130 (emphasis added). Defendant Beems appears to be simply another APS teacher, with Plaintiff attaching a "supervisory" role to Ms. Lauer by the fact that Ms. Lauer was "sole controller" of her classroom. *See* Resp. at 10 ("Supervisory-Liability Attaches to Laure [sic] as Sole Controller of the Classroom").

Second, Defendant contends that except for this lone assertion, there are insufficient facts regarding Defendant Lauer's own conduct to support any plausible legal

---

³ Here again, Plaintiff's counsel demonstrates a poor grasp of the relevant law, since here it is not Defendant's burden to show that she is *not* liable but rather *Plaintiff's* burden to present facts that are sufficient to withstand dismissal under the federal civil rules.

7

theory against Defendant in Count V under the *Iqbal-Twombly* standard. Plaintiff attempts to rehabilitate these deficiencies in the response brief, for example:

> Defendant Amy Lauer did not take reasonable steps to protect Plaintiff's bodily integrity, did not provide a safe educational environment, did not report abuse in the classroom, and through incompetence or indifference she facilitated, permitted, contributed to, created the possibility for, and, therefore, proximately caused the opportunity for William Beems to prey upon Plaintiff in and out of the classroom by her actions and omissions. (Resp. Brf., Doc. 28 at 13, n.9).
>
> Amy Lauer failed to act in good faith and failed to act as a reasonable teacher would have under the circumstances, and these acts and omissions contributed to the known or constructively known dangerous conditions. (Doc. 28 at 14).
>
> Amy Lauer knew or should have known [about Defendant Beems "private access to Plaintiff" in her presence." (Doc. 28 at 13-14).
>
> [Defendant Lauer is liable for] [i]ndifferently condoning, ignoring, or incompetently failing to recognize in-classroom sexual abuse by a teaching assistant with whom Defendant Laure fostered a special relationship for and with her students, and sending Plaintiff off with this apparent sexual predator off campus alone with a first grade girl he rubbed his erect penis on in the classroom None of these specific allegations is contained is contained in the complaint. (Doc. 28 at 11).

The problem here is that none of these allegations, or anything like them, is included in Count V of the complaint. A response brief is not a substitute for a poorly-drafted complaint, and courts must consider the complaint—not the response brief— when considering the merits of a motion brought under Rule 12(b)(6) or Rule 12(c). Plaintiff in this case is represented by counsel and so will not be afforded a liberal construction of his pleadings. *See Shah v. County of Los Angeles,* 797 F.2d 743, 745 n. 1 (9th Cir.1986) (declining to broaden complaint of plaintiff represented by counsel); *cf. Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (federal courts are to liberally construe

"inartful pleading" of pro se litigants); *Healey v. Scovone,* 1999 WL 535298, 1 (10th Cir. 1999).

A plaintiff alleging a supervisory liability claim under §1983 against a defendant based on his or her supervisory responsibilities must show an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010). A supervisory relationship alone is insufficient. *Id.* A supervisor's "mere knowledge" of his subordinate's conduct is also insufficient. *Id.,* at 1210; *Iqbal,* 556 U.S. at 677; *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The required "affirmative link" contains three elements: (1) personal involvement, (2) causation, and (3) state of mind. *See Dodds,* 614 F.3d at 1185 (§1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which deprives plaintiff of constitutional rights). The complaint contains no factual information or detail on any of these elements. Without particular allegations of Defendant Lauer's personal involvement in the underlying misconduct, Plaintiff fails to state a claim under a supervisor liability theory. Further, under Tenth Circuit precedent, supervisory liability under §1983 is appropriate only:

> where the plaintiff can prove that the supervisor *caused* the violation. And in a case like *Iqbal,* where the constitutional violation requires discriminatory intent, a supervisor does not *cause* a violation unless he or she actually intended for his or her subordinates to invidiously discriminate. Mere knowledge and acquiescence of, or even "deliberate indifference" towards, the discriminatory actions of employees now appears insufficient to prove causation, and thereby prove liability.

*Dodds,* 614 F.3d at 1210 (emphasis in original). Here, there are vague allegations that Defendant Lauer "indifferently condon[ed], ignor[ed], or incompetently fail[ed] to recognize the in-class sexual abuse by a teaching assistant with whom [Ms. Lauer] fostered a special relationship." Resp. at 11. This alleged "failure to recognize" does not begin to allege a supervisory liability claim.

Count V suffers the same infirmities for other constitutional claims, that is, a failure to assert facts specific to Defendant Lauer's conduct. For example, the complaint asserts that:

> The willful disregard for the obvious inappropriate sexual exploitation of Plaintiff is so egregious and outrageous that the Defendants [sic] actions and omission of defendants shock the conscience for the purposes of the Fourteenth Amendment.

Compl., ¶159. In the response, Plaintiff states that Ms. Lauer "sen[t] Plaintiff off with this apparent sexual predator off campus alone. . . ." Resp. at 11. Plaintiff offers other variations on the same theme elsewhere in the response. *See* Resp. at 11 (stating that Ms. Lauer "permitt[ed] the off campus trips for the abuser alone with the child. . . ."); Resp. at 16 (stating the Ms. Lauer "allowed the dangerous person to abuse and then remove plaintiff to the privacy of his predilections. . . ."). However, the complaint itself contains no allegation that Defendant Lauer "sent" Plaintiff off campus with Mr. Beems. Instead, the allegations in the complaint are vague assertions against all Defendants in his case and as a result, do not identify how Ms. Lauer violated Plaintiff's constitutional or statutory rights. *See, e.g.,* Compl., ¶ 197 ("Plaintiff was transported off campus to 'get seed' with permission of Defendants, at which time Plaintiff was locked in the private vehicle of William Beems, transported to his private home . . . with the permission of

Defendants."). Further, even these inclusive allegations do not point to conduct that is constitutionally unlawful; giving Plaintiff permission to go off campus with Defendant Beems, without any more, does not give rise to a viable constitutional claim.

Equally nebulous are Plaintiff's allegations regarding policies and practices that violated Plaintiff's constitutional rights:

> The APS Office of Equal Opportunity Services had the affirmative responsibility to monitor the compliance of District policies and procedures, which follow requirements under State and Federal Laws, and Regulations related to discrimination and harassment (Compl., ¶144);
>
> Defendant, William Beems, in his position as a state actor, made inappropriate physical contact with Plaintiff for his sexual gratification (Compl., ¶175);
>
> Defendants were complicit by idle participation, poor policies, practices, and patterns permissive of this persistent condition in the schools (Compl., ¶176);
>
> APS hired a known sex-offender with pedophilial predilections to the highest levels of administration without back-ground checks, and protected him in his position of authority and power (Compl., ¶177);
>
> These patterns, policies, and practices "trickled-down" all the way to the perpetrator who victimized Plaintiff, substantially contributing to the harms and injuries caused by the violations of her state and federal constitutional rights, for which Defendants are liable (Compl., ¶178).

These allegations may form a plausible claim against the school system based on William Beems' conduct, but there is no plausible way to connect these allegations with Ms. Lauer's conduct. Here again, Plaintiff tries to correct these deficiencies in the response. *See, e.g.,* Resp. at 14 ("Defendant Amy Lauer created an environment, implemented or enforced practices, customs, and policy [that made Defendant Weems' conduct possible]; Resp. at 16 ("Defendant Laure [sic] is liable for the policies, practices, and customs in the classroom that "permitted, contributed to, or caused sexual

11

molestation"); *but see* Resp. at 12 (Defendant Lauer's *supervisor's* promulgation, creation, implementation, or utilization of a policy that caused a deprivation of Plaintiff's rights constituted sufficient personal involvement) (emphasis added).

For all these reasons, the Court finds that Plaintiff's complaint does not allege a plausible claim against Defendant Lauer because it is factually insufficient and fails to identify how Ms. Lauer's conduct violated Plaintiff's rights.

B. <u>Right Was Not Clearly Established</u>

Based on the Court's conclusion above, there is no need to address the second qualified immunity prong. However, even if the complaint was sufficient to withstand dismissal at this stage, the Court also finds that Ms. Lauer would be entitled to qualified immunity based on the second prong of the qualified immunity analysis because Plaintiff has not shown that the law was clearly established that, based on the allegations in the complaint, Ms. Lauer would have known that she was violating Plaintiff's constitutional rights.

The Tenth Circuit has held that a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts holds that such a right exists." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). If there is no previous decision that is "materially factually similar or identical to the present case," then "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

In her discussion on the "clearly established" prong, Plaintiff offers only generic law pertaining to the Fourteenth Amendment (Resp. at 8-10), and to supervisory liability

12

(Resp. at 10-16). Plaintiff also offers argument on the issue with no supporting or relevant case law. For example, Plaintiff cites to *Ingraham v. Wright*, 430 U.S. 651 (1977) for the proposition that her "right to be free from unjustified intrusions on personal security" was clearly established, but because *Ingraham* does not offer specificity as to any of the facts underlying Ms. Lauer's alleged conduct, is falls woefully short of satisfying the "clearly established" prong. *See Waters v. Coleman*, 632 F. App'x 431, 436 (10th Cir. 2015) ("The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'"); *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (the contours of the legal principle "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (citing *Mullenix v. Luna,* 577 U.S. ––––, ––––, 136 S.Ct. 305, 309 (2015) (*per curiam* ) ("clearly established" standard "requires a high "degree of specificity").

What is at issue here, as Defendant points out, is whether Ms. Lauer, a teacher uninvolved in any alleged sexual misconduct, would reasonably understand that her conduct somehow violated Plaintiff's constitutional or statutory rights. Plaintiff describes Ms. Lauer's conduct as:

> Indifferently condoning, ignoring, or incompetently failing to recognize in-classroom sexual abuse by a teaching assistant with whom Defendant Laure fostered a special relationship for and with her students, and sending Plaintiff off with this apparent sexual predator off campus alone with a first grade girl he rubbed his erect penis on in the classroom violates Plaintiff's "clearly established" rights under the Fourth and Fourteenth Amendments, along with other state and federal laws, statutory provisos and common moral decency.

13

Resp. at 11. However, Plaintiff offers no case law holding indicating that this alleged conduct in fact violates an individual's rights. Instead, she offers only arguments of counsel, which does not satisfy her burden to show that the *law* was clearly established by pointing to a Supreme Court or Tenth Circuit decision on point—and this she has not done. Therefore, Defendant is entitled to qualified immunity because Plaintiff has not shown that the law was sufficiently clearly established to where Ms. Lauer would have known that her conduct as alleged in the complaint would violate Plaintiff's constitutional rights.

## II.     State Law Claims

Plaintiff has conceded to the dismissal of Count IV, and so the remaining claim that must be addressed for purposes of this motion is Count II, alleging Negligence and Premises Liability. Count II is premised on negligent hiring, supervision and retention of William Beems, *see* Compl., ¶¶51-52. Section 41-4-4 is the provision in the New Mexico Tort Claims Act ("Tort Claims Act") which grants immunity to a governmental entity and any public employee "while acting within the scope of duty." The same section also provides for waivers of this immunity, for example as provided for in Sections 41-4-5 through 41-4-12.

Section 41-4-6 of the Tort Claims Act protects private citizens from the consequences of dangerous conditions created by public employees in the "operation and maintenance" of public facilities and states in relevant part:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

14

N.M. Stat. Ann. § 41-4-6 (West).  While Section 41–4–6 may appropriately be termed a "premises liability" statute, the liability envisioned by that section is interpreted broadly and is not limited to claims caused by injuries occurring on or off a certain "premises." *See Bober v. N.M. State Fair*, 111 N.M. 644, 653 (1991) (motorist injured in collision with vehicle at state fairgrounds). Liability is predicated not only on "maintenance" of a piece of publicly owned property, such as a building, park, or item of machinery or equipment, but it also arises from the "operation" of any such property. *Id.*

Claims of negligent supervision do not trigger a waiver of liability under the New Mexico Tort Claims Act. *Leithead v. City of Santa Fe*, 123 N.M. 353 (1997) ("[I]t is not enough to show that public employees negligently supervised persons in their care and that the resulting injury occurred on public property."). The negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service[,] or the users of the building" to waive immunity. *Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205, 210 (2006); *see Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 14, 310 P.3d 611, 618 (school's failure to address pattern of student violence in a particular area  might create an unsafe condition on the premises and such failure is *not* merely failure to supervise) (emphasis in original).

In the general allegations, Plaintiff asserts that ". . . when Defendants from APS and Monte Vista School discovered that Plaintiff had been sexually abused and exploited by one of the school's employees, they attempted to intimidate Plaintiff and threaten Plaintiff into silence." Compl., ¶18.  There is no description of Ms. Lauer's conduct specifically in that statement.  However, in Count II, Plaintiff asserts that Ms. Lauer had a duty to "protect against and report the allegations of sexual abuse against [William

Beems] to law enforcement after notice," and that she had the "willful intention to put children at risk from known and identified sexual predators in order to avoid negative publicity or other repercussions. Compl., ¶¶56-57. Under the *Iqbal-Twombly* standard, and viewing these facts favorably to Plaintiff as the Court must, Plaintiff alleges here that Ms. Lauer was on notice concerning Mr. Beems' conduct toward Plaintiff and failed to report it, and thus failed to keep protect other students who may have been at risk from sexual predators such as Defendant Beems. *See, e.g., Montoya on Behalf of S.M. v. Espanola Pub. Sch. Dist. Bd. of Educ.*, No. CV 10-651 WPJ/LFG, 2013 WL 12334162, at *4 (D.N.M. Apr. 23, 2013) (allegations by student that she was "attacked," "assaulted" and that another student attempted to push her down a stairwell alleged plausible claim under §41-4-6); *Montoya on Behalf of S.M. v. Espanola Pub. Sch. Dist. Bd. of Educ.*, No. CV 10-651 WPJ/LFG, Doc. 333 at 6-8 (Court's ruling that plaintiff who suffered sexual assault and resulting in injuries that were psychological in nature as a result of the assault sufficiently alleged claim under § 41-4-6). Of course, whether Ms. Lauer was in fact on notice or knew about Defendant Beems' conduct is unknown and may be fleshed out at a later time, but under the more forgiving standards (from plaintiff's standpoint) of Rule 12(b)(6) and 12(c), these allegations are enough for this claim to survive as to Defendant Lauer. Defendant's motion is therefore denied as to Count II.

## CONCLUSION

In sum, the Court finds and concludes that Count IV, asserting Negligent and Intentional Infliction of Emotional Distress, is dismissed under Rule 12(b)(6). Plaintiff concedes that this is not an enumerated tort under the New Mexico Tort Claims Act. The Court therefore dismisses Count IV under 12(b)(6).

The Court also finds and concludes that Count V of the complaint does not allege a plausible claim against Defendant Lauer because it is factually insufficient and fails to identify how Ms. Lauer's conduct violated Plaintiff's constitutional rights. The Court also finds that Defendant is entitled to qualified immunity because Plaintiff has not shown that the law was sufficiently clearly established to where Ms. Lauer would have known that her conduct as alleged in the complaint would violate Plaintiff's constitutional rights

Defendant is not, however, entitled to dismissal of Count II because the complaint includes sufficient allegations to state a claim under the §41-4-6 of the Tort Claims Act.

**THEREFORE,**

**IT IS ORDERED** that Defendant Amy Lauer's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings to Dismiss Plaintiff's Claims for Negligence, Violation of Constitutional and Civil Rights and Intentional and Negligent Infliction of Emotional Distress **(Doc. 20)** is hereby GRANTED IN PART and DENIED IN PART; the motion is GRANTED in that Counts IV and V are dismissed with prejudice, but the motion is DENIED as to Count II.

_____
CHIEF UNITED STATES DISTRICT JUDGE