# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JANE DOE "VICTIM",

    Plaintiff,

    v.                                                                                                                             No.18-CV-00085 WJ/KK

ALBUQUERQUE PUBLIC SCHOOLS "APS,"
MONTE VISTA ELEMENTARY SCHOOL "MONTE VISTA,"
JOHN AND JANE DOE APS OFFICIALS AND EMPLOYEES,
AMY LAUER,[1] AND WILLIAM BEEMS

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SANCTIONS

THIS MATTER comes before the Court following a hearing upon Defendant Beems' Motion for Imposition of Rule 11 Sanctions and Sanctions Pursuant to 28 U.S.C. §1927, filed on September 26, 2018 **(Doc. 50)**. Having reviewed the parties' pleadings, the applicable law and after considering counsel's arguments presented at the hearing, the Court finds that Defendant's motion is granted with regard to sanctions under §1927.

## BACKGROUND

Plaintiff filed this action alleging that she was sexually assaulted by Defendant William Beems while she was a student at Monte Vista Elementary approximately twenty years ago, in violation of various federal statutory provisions and state tort law. Plaintiff filed this lawsuit on December 20, 2017 in the Second Judicial District, County of Bernalillo and Defendants removed the case to federal court under federal question jurisdiction (28 U.S.C. §1331). The

---

[1] Defendant's last name is also spelled "Laure," e.g., in the caption of the Complaint (see Doc. 1-2), but the name appears as "Lauer" more frequently.

Court ultimately dismissed all federal claims in the lawsuit and remanded the case back to state court, declining to exercise supplemental jurisdiction over the state law claims. The complaint contains six counts:

> Count I: Sexual Assault, Abuse and Battery against Defendant Beems;
> Count II: Negligence and Premises Liability;
> Count III: Vicarious Liability and Premises Liability;
> Count IV: Negligent and Intentional Infliction of Emotional Distress;
> Count V: Violations of Plaintiff's Due Process, Equal Protection and Constitutional Rights (state and federal); and
> Count VI: Outrage, Systemic Failure and Prima Facie Tort.

**I.     Procedural Posture**

    A.     <u>Defendant Lauer's Motion to Dismiss</u>

On May 29, 2018, the Court granted Defendant Lauer's motion to dismiss Counts IV and V based on Plaintiff's failure to assert plausible claims against that Defendant, finding that the complaint was factually insufficient and failed to identify how Ms. Lauer's conduct violated Plaintiff's constitutional rights. Doc. 33.[2] The Court also found that Defendant Lauer was entitled to qualified immunity on the federal claims because Plaintiff failed to show that the law was sufficiently clearly established to where Ms. Lauer would have known that her conduct as alleged in the complaint would violate Plaintiff's constitutional rights. In that decision, the Court denied Defendant Lauer's motion to dismiss as to the state law claim in Count II brought under the New Mexico Tort Claims Act ("Tort Claims Act") asserting negligence and premises liability. Plaintiff had alleged that Ms. Lauer was on notice regarding Defendant Beems' conduct toward Plaintiff and had failed to report it, and since the Court was required to view facts favorably to Plaintiff under a Rule 12(b)(6) standard, Count II was not dismissed. The Court also expressed concern about the quality of the drafting of the complaint, stating: "In short, the drafting of the complaint

---

[2] Ms. Lauer was a teacher at Monte Vista Elementary School. Plaintiff alleged that she had a "supervisory role" over Defendant Beems.

indicates either a sloppiness and lack of due care on Plaintiff's counsel's part, or an unfamiliarity with the various federal legal theories Plaintiff's counsel purports to raise in this case." Doc. 33 at 7. Attorney Charles H. Kalm is counsel of record for the Jane Doe Plaintiff in this case.

### B. Defendant Beems' Motion to Dismiss

On August 27, 2018, the Court granted Defendant Beems' motion to dismiss Plaintiff's federal and state law claims for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1) and for lack of merit under Rule 12(b)(6). Doc. 48. The Court found that Plaintiff's claims brought under 42 U.S.C. §1983, Title IX and Title VII were time-barred and were not subject to any tolling or continuing violation doctrine that would extend the three-year limitations period applicable to §1983 claims for personal injury in New Mexico and dismissed the federal claims with prejudice under Rule 12(b)(6). The Court also declined to exercise supplemental jurisdiction over Plaintiff's state law claim, remanding the case to state court.

In addition, Defendant Beems sought sanctions. In addressing that request, the Court again expressed concern "over the manner in which Plaintiff's counsel has litigated this case," *see* Doc. 48 at 13, and deferred ruling on the sanctions issue pending briefing by parties, which has now been completed. *Id*.

In this motion, Defendant seeks sanctions under both Fed.R.Civ.P. 11 and 28 U.S.C. §1927, and contends that Plaintiff filed a baseless and frivolous lawsuit against him and pursued the action in bad faith. Defendant argues that it would have been obvious to any reasonable and competent attorney that Plaintiff's claims would be time-barred under the applicable statute of limitations depriving the Court of subject matter jurisdiction. In addition, relevant case law from the Tenth Circuit would have indicated to an attorney showing minimal due diligence in researching the matter that most of Plaintiff's federal claims were subject to dismissal under Tenth Circuit

3

precedent. Plaintiff's counsel contends that he presented Plaintiff's federal claims based on legal theories that a reasonable and competent attorney could believe had merit, and that sanctions are not warranted.

**II.     Relevant Law**

A district court has discretion under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. §1927 and its inherent equitable powers to impose costs against an attorney as a sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 48 49 (1991) (recognizing a court's inherent equitable power to sanction an attorney).

    A.      Rule 11

Under Rule 11, the attorney, in signing a pleading, affirms that, after making a reasonable inquiry, he believes in good faith that the pleading is well grounded both in fact and in law. *Cotner v. Hopkins*, 795 F.2d 900, 903 (10th Cir. 1986). However, Rule 11 contains a "safe-harbor" provision which requires a party to serve a copy of its Rule 11 motion on the other party and to give that party an opportunity (generally 21 days) to withdraw or correct the challenged document before filing the sanctions motion with the court. At the hearing, defense counsel advised the Court that he had not provided any notice, much less a Rule 11 motion to Plaintiff's counsel at any time, but urged the Court to accept the pleadings related to the motion to dismiss as substitute for the "safe harbor" motion requirement. This the Court cannot do, as Rule 11 is quite explicit in that it requires notice in the form of a motion to satisfy the "safe harbor" requirement, and the Tenth Circuit has held that it is an abuse of discretion to grant Rule 11 sanctions if a defendant does not comply with that requirement. *See Roth v. Green,* 466 F.3d 1179, 1191-92 (10th Cir.2006). (district court abused discretion where all defendants sent plaintiff's counsel warning letters well in advance of filing their motions for sanctions, but did not send actual motions for sanctions within

twenty-one days prior to filing of those motions, as required under Rule 11(c)(2)). Because Defendant did not comply with the "safe harbor" requirement, the Court cannot consider the imposition of Rule 11 sanctions.

Moreover, Defendant's request for Rule 11 sanctions comes too late, now that Plaintiff's federal claims have been dismissed. *Roth,* 4446 F.3d at 1193 (it is an abuse of discretion to grant a Rule 11 motion that is filed after the dismissal of the case "because it is then impossible to comply with the safe-harbor provision"); *see also Hutchinson v. Pfeil,* 208 F.3d 1180, 1183–84 (10th Cir.2000) (reliance on Rule 11 would have been untimely because the motion for attorney fees was filed after summary judgment). Thus, the Court may consider sanctions imposed only under 28 U.S.C. §1927.

B. Sanctions Under 28 U.S.C. § 1927

Section 1927 is a natural outgrowth of the inherent authority of a court to assess costs and attorney's fees . . . against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (quotation omitted)). *Dreiling v. Peugeot Motors of Am.*, 768 F.2d 1159, 1164–65 (10th Cir. 1985). Under 28 U.S.C. §1927, an attorney who unreasonably multiplies the proceedings in any case may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct. *Danielson-Holland v. Standley & Assocs., LLC*, 512 Fed. Appx. 850, 853 (10th Cir. 2013) (unpublished decision). "Section 1927 focuses on whether an attorney's conduct 'imposes unreasonable and unwarranted burdens on the court and opposing parties.'" *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987). Sanctions under § 1927 are appropriate "when an attorney acts recklessly or with indifference to the law." *Id.*

Sanctions are appropriate when an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted. *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir.2006). We consider an attorney's actions under the standard of objective bad faith. *Braley*, 832 F.2d at 1512. Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995).

## DISCUSSION

Defendant contends that sanctions are warranted under 28 U.S.C. §1927 because Plaintiff filed a baseless and frivolous lawsuit against him and pursued the action in bad faith. Defendant argues that it would have been obvious to any reasonable and competent attorney that Plaintiff's claims would be time-barred under the applicable statute of limitations depriving the Court of subject matter jurisdiction. In addition, relevant case law from the Tenth Circuit would have indicated to an attorney showing minimal due diligence in researching the matter that most of Plaintiff's federal claims were subject to dismissal under Tenth Circuit precedent. Plaintiff's counsel contends that he presented Plaintiff's federal claims based on legal theories that a reasonable and competent attorney could believe had merit, and so should not be sanctioned. Because the Court remanded the state law claims, the Court's inquiry is necessarily limited to whether Plaintiff should have pursued the federal claims, namely those brought under Title IX, Title VII, §1983 and 18 U.S.C. §§2254 and 2255.[3]

---

[3] Plaintiff argues that the Court's remand of the state law claims precludes a finding that sanctions are appropriate, since their merits are yet to be decided. However, the disposition of the state law claims has no bearing on whether Plaintiff's §1983 claims should have been brought, particularly where the inquiry involves limitations periods that are specific to those claims.

**I.      Equitable Tolling**

Plaintiff acknowledged that this lawsuit was filed outside of the applicable three-year limitations period for her §1983 claims, but argued that the claims were nevertheless timely under equitable tolling doctrines, namely, the continuing violation theory and the federal "discovery rule" governing accrual of claims.

   A.      Continuing Violation Doctrine

Plaintiff maintains that *Varnell v. Dora Consol. Sch. Distr.* somehow supports application of the continuing violation rule to Plaintiff's §1983 claims because the court in that case looked to the last act of battery for accrual purposes. 756 F.3d 1208 (10th Cir. 2014).

The "continuing violation" doctrine is an "exception to the general rule that a statute of limitations period begins running on the first occurrence of illegality." *M.L. v. Bd. of Educ. of Floyd Mun. Sch.*, No. CIV-08-513 BB/RHS, 2008 WL 11450501, at *2 (D.N.M. Dec. 5, 2008). The doctrine allows claims that are outside the limitations period to relate back to a time within the limitation period and is "premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003).

The *Varnell* court did not rely on the "continuing violation" doctrine; it only looked to see when the last alleged incident of abuse occurred in order to determine when the statute of limitations began to run. 756 F.3d at 1216 (The statute of limitations "does not usually begin to run until the tort is complete, and may not begin to run even then if there has been a series of continuous acts"). *Varnell* did not—as the Court noted in its decision—use a form of the "continuing violation" doctrine.

Plaintiff's counsel had the obligation to reasonably investigate and understand the law he presented to the Court and to make sure that the arguments he made were supported by that law. It was clear to the Court early on that while counsel had conducted some research on the issues, there was little concern as to whether his position was supported by what he found. First, as the Court noted in its decision, there was no examination at all regarding whether the "continuing violation" doctrine applies to anything other than Title VII claims. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *M.L. v. Bd. of Educ. of Floyd Mun. Sch.*, 2008 WL 11450501, at *2 (D.N.M. Dec. 5, 2008) (the continuing violation theory is a creature of the need to file administrative charges, and "does not apply to claims that do 'not require [the] filing of charges before a judicial action may be brought"); *Folkes v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 288 (E.D.N.Y. 2002) (addressing Title IX).[4]

Second, Plaintiff's counsel apparently failed to give any thought to whether the "continuing violation" doctrine was a viable argument in the first place under the facts alleged. The doctrine could benefit Plaintiff only if some of the alleged claims took place within the relevant limitations period. Here, no claims were alleged beyond 2003 and as the Court noted, because the last alleged act of abuse was 2003, Plaintiff's claims would still be time-barred, even applying the "continuing violation" doctrine. Doc. 48 at 10.

At the hearing, Plaintiff's counsel stated that he basically read *Varnell* to be silent on whether the "continuing violation" rule applies to §1983 claims (which it is). This was a departure from his initial position where he claimed that the court in *Varnell* had "applied a form of the

---

[4] The Joint Status Report stated that Plaintiff was asserting a Title VII claim, although the basis for this claim was not alleged in the complaint. *See* Doc. 1-2, ¶¶145 & 176. Even so, Plaintiff did not even attempt to argue that his Title VII claims were timely or that they had been administratively exhausted within the 300-day time period. *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 n.1 (10th Cir. 2018); *see also Lincoln et al v. BNSF Railway Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim).

continuing violation doctrine." Doc. 41 at 5. Regardless of how counsel interprets *Varnell,* the "continuing violation" doctrine cannot keep Plaintiff's federal claims alive, and a modicum of research and reflection would have revealed this. There is a difference between pushing the legal envelope and failing to exercise due diligence in order to determine whether an argument should be taken up in the first place. Such offhand conduct comes squarely within the "cavalier" conduct proscribed by §1927. In adhering to a legal position that was totally devoid of any merit, Plaintiff's counsel also exhibited a recklessness and indifference to the law that imposed a burden on both the Court and opposing counsel.

      B.      <u>Accrual of Action Under Federal "Discovery Rule"</u>

Similarly, in her response to Defendant's motion to dismiss, Plaintiff contended that she did not discover that she was abused until she underwent therapy in 2014, less than three years prior to filing the complaint, relying on the federal "discovery rule." Plaintiff contends the Court rejected the "delayed discovery" argument solely because she failed to plead the fact that the injury was not "revealed to her until she underwent therapy." Doc. 51 at 6. This is partly true. The Court did note in its analysis that the specific reason for Plaintiff's delayed discovery (undergoing therapy in 2014) was not included in any of the allegations and was introduced for the first time in response to Defendant's motion to dismiss. Doc. 48 at 9. The Court also noted that there were no words like "tolling," "repressed," and "memory" included anywhere in the complaint, which might have at least hinted at a delayed discovery issue. *Id.* at 9, n.6. Even now, Plaintiff insists that information of her delayed awareness is contained in ¶¶25 and 26 of the complaint stating that "victims of childhood sexual abuse frequently develop delayed PTSD, anxiety attacks, depression or other symptoms . . . often decades after the childhood sexual abuse occurs" and "Plaintiff has suffered these and other severe symptoms, has sought professional care, and requires further care

and treatment." Doc. 51 at 7. Somehow, Plaintiff believes that this language, and additional language relating to Plaintiff's need for further counseling, is a fair substitute for facts asserting that Plaintiff did not become aware of the abuse she allegedly suffered until she underwent therapy in 2014. It is not, and there is no connection between this generic information and the distinct assertion that this particular plaintiff was not aware of her alleged abuse until the specific year 2014, so many years after the abuse.

There was, however, another reason why the Court rejected Plaintiff's "delayed discovery" argument: Plaintiff's own facts, assuming every one of them to be true, are inconsistent with her claim of "delayed discovery" until 2014. As the Court noted in its decision:

> Plaintiff points to certain facts in the complaint regarding alleged intimidation by the school and by Defendant which continued from the time of the abuse to the present, in order to discourage her from coming forward. Compl., ¶¶72, 80. Assuming these facts to be true, they belie Plaintiff's claim that she did not "discover" the abuse until 2014. The Court therefore finds that, based on the facts in the complaint and on her own representations in argument, Plaintiff had to know, or should have known, of all the facts necessary to bring a timely action against Defendant for sexual abuse and concludes that there is no basis to apply the discovery rule to this case.

Doc. 48 at 9. "The delayed discovery" argument, along with the facts offered to support it, left the Court with the impression that counsel improvised the facts as he went along, to fit whatever legal argument was most convenient and without the research or forethought that should have been exercised beforehand. Plaintiff's counsel decided to press forward with these tolling arguments as though they were supported by a legal basis, and this was misleading to the Court.

Under any of the tolling theories that were embraced by Plaintiff's counsel, Plaintiff's claims were still untimely, and this would have been obvious to an attorney who conducted an initial investigation of the claims being asserted.

## II.     Other Federal Claims

Plaintiff's other federal claims can be grouped under a federal statute that allows civil remedies for violations of certain federal misconduct statutes. 18 U.S.C. §2255 provides that:

> Any minor who is a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation may sue in any appropriate United States District Court and shall recover the actual damages such minor sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. §2255. Plaintiff also alleged violations of 18 U.S.C. §2254, providing for civil forfeiture of property used in the commission of a crime, *see* Compl., ¶184. What the complaint offered, however, was a chaotic assortment of these misconduct statutes. *See* Compl., ¶¶188-189 (alleging violations of § 2421-2423, 2241, 2242, 2243, 2251 and 2260). In its memorandum opinion, the Court found that (1) Plaintiff's allegations for these claims did not meet the *Twombly-Iqbal* standard;[5] (2) it was not clear whether a criminal conviction was necessary as a predicate offense, and there was no evidence that there had been any such proceedings against Defendant; and (3) the predicate offenses for the federal misconduct statutes implicated the Commerce Clause, and there was no showing that use of Defendant's car within the city limits had any effect on the furtherance of interstate commerce. *See* Doc. 48.

The Court also finds that in bringing these claims against Defendant, Plaintiff's counsel showed an indifference to the law that is sanctionable under §1927 for several reasons. First, it is uncertain whether Plaintiff's counsel even took pains to read the language in §2254 which provides that: "Any property subject to forfeiture pursuant to section 2253 **may be forfeited to the United States** in a civil case . . . ." 18 U.S.C. §2254 (emphasis added). Plaintiff sought forfeiture of Defendant's house, car and possessions,

---

[5] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specifically, the Court that Plaintiff had not provided any facts "that come anywhere close to asserting a plausible claim under [§2255] for any of the predicate offenses." Doc. 48 at 11-12.

without giving any thought at all to whether a private citizen could stand in the shoes of the United States in a forfeiture proceeding (nor did Plaintiff's counsel ever offer any legal basis for such a notion).

Second, the other federal offenses were simply thrown into the complaint without any effort to first determine whether these were viable claims:

- Sections 2421-2423, 2241(c) and 2243 require that the violations occur "in the special maritime and territorial jurisdiction of the United States." It is unreasonable to claim that transportation of Plaintiff in Defendant's car qualifies as an occurrence within the meaning of 18 U.S.C. §7, which defines "special maritime and territorial jurisdiction."

- Sections 2242 and 2251 require as an element that an individual "knowingly transports any individual in interstate or foreign commerce" or "transports any minor in or affecting interstate . . . commerce"). The Court had questioned whether the allegations in this case could satisfy that element. In his brief, Plaintiff's counsel had cited to a few courts which found that use of an "instrumentality of interstate commerce" could satisfy the interstate commerce requirement, and that an automobile would be just such an example.[6] At the hearing, Plaintiff's counsel did not argue that these authorities provided a legal basis for advancing claims against Defendant under either §§2242, 2251 or even 2255. In fact, he conceded that there was no authority on point as to whether Defendant's use of a car satisfies §2255 and instead asked for a "reasonable extension of the law" on that issue.

- Section 2260 makes it a crime to transport any minor with the intent that the minor engage in any sexually explicit conduct for the purpose of producing any visual depiction. However, within the 50-page complaint, there was no mention of an attempt to engage Plaintiff in any conduct involving sexually explicit photographs.

---

[6] *See U.S. v. Mandel*, 647 F.3d 710, 716 (7th Cir. 2011) (use of automobile as means of transportation constituted facility of interstate commerce for purposes of the federal murder for hire statute, § 1958(b)(2)); *U.S. v. Giordano*, 442 F.3d 30, 39 (2nd Cir. 2006) (as matter of first impression, finding phone calls between two persons in the same state to satisfy § 2425 requirement because telephones are instrumentalities of interstate commerce); *U.S. v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996) (Congress had power to regulate automobiles, "even though the threat may come only from intrastate activities").

Thus, in addition to filing a complaint that lacked a factual description of the specific conduct underlying any of the alleged predicate offenses, Plaintiff could not even meet the threshold requirements of the predicate offenses for 18 U.S.C. §2255 or §2254.

The Court agrees with Defendant's counsel that Plaintiff's counsel failed to stop, think and investigate before filing the complaint, and the Court finds that sanctions under 28 U.S.C. §1927 are appropriate in order to deter such a cavalier approach to litigation. The Court is guided in particular by the heinous nature of the alleged acts, and acknowledges the damaging effect such acts can have on victims in general.

The complaint in this case alleges horrendous acts of sexual abuse perpetrated by Defendant upon the Plaintiff which occurred approximately twenty years ago but allegedly were only discovered by Plaintiff in 2014 through therapy. While the Court is mindful of the damage that can be done to victims of sexual abuse, the Court also acknowledges that there are occasions when defendants are falsely accused in these types of cases. Under these circumstances, Plaintiff's counsel was obliged to exercise vigilance and thoroughness before filing a complaint of this nature, but instead, counsel forged ahead without caution or care and filed a complaint on behalf of an anonymous Plaintiff accusing Defendant Beems of terrible conduct that supposedly happened many years ago but surfaced for the first time in 2018 when the complaint was filed as a public document.

In bringing these federal claims and in failing to adequately examine the claims before filing the case, counsel for Plaintiff has shown an indifference to the law that saddled the opposing party, Mr. Beems, with unproven allegations that may follow him for years. This is not to say that Plaintiff's claims were frivolous, but they do not need to be frivolous to warrant sanctions under §1927. *See Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d at 732. Unmindful of the possible

consequences, Plaintiff's counsel proceeded to include federal claims in the complaint without seriously examining them to see whether they were viable even on threshold timeliness issues. In doing so and in continuing to pursue these claims, Plaintiff's counsel's zealousness in representing his client gave way to recklessness, which in turn led to conduct that is proscribed by §1927.

**CONCLUSION**

In sum, the Court finds and concludes that Plaintiff's counsel exhibited conduct in the filing of the complaint and in pursuing the federal claims alleged in the complaint which is sanctionable under 28 U.S.C. §1927. As the Court noted previously, Plaintiff's failure to follow Rule 11's "safe harbor" provision precludes the imposition of sanctions under that rule.

In considering the amount of sanctions to be imposed under §1927, the Court does not wish to impose an amount that would result in a chilling effect for victims of sexual abuse who would seek legal representation in order to obtain relief; but at the same time, the amount should be sufficient to compel a reasonable attorney to adequately investigate, prepare and scrutinize the factual and legal basis of these claims before filing a lawsuit alleging such claims against an individual.

Given the number of claims in this case and the complexity of the issues Defense counsel was required to address, and given the exceptional quality of Defense counsel's work, the Court is quite confident that Defense counsel expended considerable attorney time in representing Defendant Beems. Based on the Court's experience reviewing many requests for attorney's fees, the Court finds that sanctions in the amount of $6,000.00 accomplishes the objective of discouraging the hasty filing of complaints of this nature without adequate forethought and investigation. The Court acknowledges that this does not in any way fully compensate Defense counsel for all the work expended in filing the various motions in defending this case. However,

the monetary sanctions is set at a lower amount so as not to create a chilling effect for attorneys to represent alleged victims of sexual abuse. Additionally and for the same reason, these sanctions are imposed solely against Plaintiff's counsel so that future victims of alleged sexual abuse are not discouraged from coming forth and seeking legal representation.

Therefore, the Court finds that sanctions against Plaintiff's counsel in the amount of $6,000.00 is sufficient to accomplish the Court's objective.

**IT IS THEREFORE ORDERED** that Defendant Beems' Motion for Imposition of Rule 11 Sanctions and Sanctions Pursuant to 28 U.S.C. §1927 **(Doc. 50)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order; and Plaintiff's counsel Charles H. Kalm is ordered to pay Defendant the sum of $6,000.00.

**IT IS FURTHER ORDERED** that this Order imposing sanctions is directed solely against Plaintiff's counsel, Attorney Charles H. Kalm, and he shall not make any attempt to cause his client to pay the sanctions imposed by the Court.

_____
CHIEF UNITED STATES DISTRICT JUDGE